[Cite as *State v. Ahmed*, 2023-Ohio-3464.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

NAWAZ AHMED

Defendant,

S. ADELE SHANK,

Appellant.

---

### OPINION AND JUDGMENT ENTRY
### Case No. 22 BE 0071

---

Criminal – Capital Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 99 CR 192

**BEFORE:**
Carol Ann Robb, David A. D'Apolito, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Reversed and Remanded.

---

*Atty. John Kevin Flanagan*, Belmont County Prosecutor, 52160 National Road, St. Clairsville, Ohio 43950, and *Atty. Stephen E. Maher,* Special Asst. Belmont County Prosecutor, Senior Assistant Attorney General, 30 E. Broad St. 23rd Floor, Columbus, Ohio 43215 for Plaintiff-Appellee and

*Atty. S. Adele Shank*, Law Office of S. Adele Shank, 4656 Executive Drive, Suite 201 B, Columbus, Ohio 43220, Appellant.

Dated:  September 27, 2023

---

**Robb, J.**

{¶1}   Attorney S. Adele Shank appeals the decision of the Belmont County Common Pleas Court overruling her motion for appointed counsel fees incurred in pursuing a serious mental illness (SMI) post-conviction petition in Nawaz Ahmed's capital case.  She filed a motion to be appointed counsel simultaneously with the SMI petition and argued Ahmed was not competent to reject counsel.  Although the court granted Attorney Shank's motion to be appointed counsel, the court later denied all fees because she did not secure Ahmed's consent before filing the petition.  However, we conclude Attorney Shank was legally entitled to receive fees due to her appointment, and it was unreasonable to find her fees could be wholly eliminated after the appointment under the circumstances of this case.  Accordingly, the trial court's decision is reversed, and the case is remanded for a decision on the fee request.

## STATEMENT OF THE CASE

{¶2}   In 1999, days before Ahmed's trial in a hostile divorce case, the bodies of Ahmed's estranged wife, her father, her sister, and the sister's two-year old daughter were discovered at the wife's house near St. Clairsville.  The victims each suffered a large slash to the neck and skull fractures.  Ahmed's electronic work badge was found by the bodies, and he last used the badge at his Columbus work place not long before his wife retrieved her family from the Columbus airport.  Hours later, Ahmed purchased a ticket to Pakistan and picked it up at a travel agent's house near a New York City airport.  He signed over his car to the agent and asked the agent to watch his children, writing a note on the back of his marriage certificate stating he was leaving his children to be handed over to his wife.  When Ahmed was arrested at the airport, he had approximately $7,000 in cash, $7,500 in traveler's checks, his will, and a large cut on his right thumb.  His DNA was found in blood recovered from the wife's kitchen (with a 1 in 7.6 quadrillion probability of someone else matching).  *State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, 813 N.E.2d 637, ¶ 2-20.

Case No. 22 BE 0071

**{¶3}** A jury convicted Appellant of four aggravated murders (three with prior calculation and design and one for purposely killing a victim under 13 years old). *See* R.C. 2903.01(A),(C). He was sentenced to death. (2/2/01 J.E.; 3/2/01 J.E.). The Supreme Court affirmed his convictions and death sentence. *Ahmed*, 103 Ohio St.3d 27.

**{¶4}** Ahmed's initial petition for post-conviction relief set forth 17 grounds for relief and requested a ruling on the petition be stayed pending a competency determination (also requesting funds for an independent psychiatric evaluation). *State v. Ahmed*, 7th Dist. Belmont No. 05-BE-15, 2006-Ohio-7069, ¶ 25. Among other holdings, we held a post-conviction petitioner is not entitled to a competency determination in the absence of a statute providing this right. *Id.* at ¶ 53-54.

**{¶5}** On April 12, 2021, a statute went into effect applicable to an aggravated murder offender who had a "serious mental illness" (SMI), which is defined as a diagnosis of Schizophrenia, Schizoaffective disorder, Bipolar disorder, or Delusional disorder where the illness significantly impaired the person's capacity to exercise rational judgment to either conform the person's conduct to the law or to appreciate the nature, consequences, or wrongfulness of the conduct. R.C. 2929.025(A)(1) (even if not meeting the standard to be found not guilty by reason of insanity or the standard to be found incompetent to stand trial). The statute made such person ineligible for a death sentence. R.C. 2929.025 (E)(2). Where an argument under the SMI statute is raised, a court shall order an evaluation. R.C. 2929.025(C). However, if the defendant "refuses to submit to an evaluation ordered under this division, the court shall issue a finding that the person is not ineligible for a sentence of death due to serious mental illness." R.C. 2929.025(F)(1).

**{¶6}** For those already convicted, these amendments permitted a post-conviction SMI petition to be filed by "any person who has been convicted of aggravated murder and sentenced to death for the offense and who claims that the person had a serious mental illness at the time of the commission of the offense and that as a result the court should render void the sentence of death, with the filing of the petition constituting the waiver described in division (A)(3)(b) of this section." R.C 2953.021(A)(1)(a)(iv). The cited division explains, "the act of filing the petition constitutes a waiver of any right to be sentenced under the law that existed at the time the offense

was committed and constitutes consent to be sentenced to life imprisonment without parole under division (A) of section 2929.06 of the Revised Code." R.C. 2953.021(A)(3)(b). For older cases, "a petition under division (A)(1)(a)(iv) of this section shall be filed not later than three hundred sixty-five days after the effective date of this amendment." R.C. 2953.021(A)(2)(b).

{¶7} The post-conviction statute also provides: "If a person sentenced to death intends to file a petition under this section, the court shall appoint counsel to represent the person upon a finding that the person is indigent and that the person either accepts the appointment of counsel or is unable to make a competent decision whether to accept or reject the appointment of counsel." R.C. 2953.021(J)(1). "The court may decline to appoint counsel for the person only upon a finding, after a hearing if necessary, that the person rejects the appointment of counsel and understands the legal consequences of that decision or upon a finding that the person is not indigent." R.C. 2953.021(J)(1). The appointed attorney shall be capital-certified and not the same counsel who represented the defendant at trial (unless expressly requested by both the defendant and the attorney). R.C. 2953.021(J)(1)-(2).

{¶8} Attorney Shank had been appointed as co-counsel in Ahmed's federal habeas proceedings.[1] On April 12, 2022, Attorney Shank filed a motion for appointment of counsel for the pursuit of an SMI petition, noting she was capital-certified and was not Ahmed's trial counsel. Explaining she represented Ahmed in the "last leg" of his federal habeas proceedings, Attorney Shank pointed out he "has not been satisfied with any lawyer from the time of trial to present" (citing 2005 trial court findings confirming his past complaints). Her motion opined (in bold and all capital letters): "Ahmed is incompetent and almost certainly will not accept the appointment of counsel and thus will be required appointment under the SMI provisions for incompetent defendants."

{¶9} The motion for appointment of counsel opined Ahmed had "diminished capacity" and "counsel reasonably believes, given Ahmed's serious mental illness, that Ahmed lacks sufficient capacity to make adequately considered decisions with regard to

---

[1] *Ahmed v. Shoop*, 6th Cir. No. 18-3292 (Sep. 27, 2018) (dismissing pro se appeal of order allowing withdrawal of retiring attorney and appointing Attorney Shank); *Ahmed v. Houk*, S.D.Ohio No. 2:07-CV-658 (May 7, 2021) (denying motion to amend or alter judgment, listing Attorney Shank as co-counsel, and noting habeas was denied on September 21, 2020).

pursuing his SMI claim." Citing Ohio Professional Conduct Rule 1.14(a), Comment 5, she explained she simultaneously filed the SMI petition to protect Ahmed's rights, as the day of her filing was Ahmed's last day to file a timely petition under the new statute, which could prevent his execution.

{¶10} The April 12, 2022 post-conviction SMI petition filed by Attorney Shank asked to vacate Ahmed's death sentence under R.C. 2953.21 and R.C. 2929.025. The petition cited the expert's trial testimony concluding Ahmed suffered "delusional disorder, persecutory type" during the time the murders were committed (Tr. 121, 131) and cited the 2001 sentencing findings where the trial court agreed Ahmed suffered from this mental disease. With attached cases in support, it was noted SMI relief can be granted without additional evaluation or hearing if pre-existing evidence meets the petitioner's burden. Attorney Shank also said appointment of an SMI examiner with further amendments to the petition, pointing out the petition can be amended without leave within 180 days.

{¶11} The SMI petition reiterated counsel's opinion that Ahmed was not competent to proceed with SMI litigation because he lacked the ability to consult with counsel with a reasonable degree of rational understanding and lacked a rational as well as factual understanding of the proceedings against him. Attorney Shank disclosed Ahmed refused to leave his cell to speak to her after she traveled to the prison to discuss the new statute with him. It was opined, "Despite a superficial appearance of ability, he cannot understand basic legal concepts or the function of court processes. He files many inexplicable pro se pleadings. Although he is not cooperative, he has never expressed a desire to die." She concluded Ahmed's "incompetence" should not deprive him of the benefit of Ohio's new law due to a missed deadline, reciting the statutory provision stating the petitioner accept appointment of counsel or be found unable to make a competent decision whether to accept or reject the appointment of counsel. R.C. 2953.21(J)(1).

{¶12} The petition concluded by asking the court to vacate the death sentence or grant leave to pursue discovery with an order for an evaluation and a hearing. (SMI Pet. 15-16). The court was also asked to stay the proceedings until Ahmed was competent to act in his own best interest or hold a hearing on competence and then appoint a guardian

ad litem or counsel as Ahmed's next friend upon granting the simultaneously filed motion to appoint counsel.  (SMI Pet. 12-13, 16).

{¶13}  On April 14, 2022, the trial court set a telephone status conference on the SMI petition and *sustained the motion to appoint counsel to pursue that petition*.  The prosecutor filed a motion to appoint two special assistant prosecutors from the Ohio Attorney General's office to assist the state, which the trial court granted.  (5/2/22 J.E.).

{¶14}  On April 27, 2022, Ahmed sent a letter to the clerk, which was filed in the case, stating he did not consent to the filing of the SMI petition and asking the clerk to refuse further items filed without his specific authorization.  Ahmed rationalized he was pursuing federal habeas corpus and was "not raising the SMI claim at this stage of my federal courts proceedings."  He expressed:  "I must focus on winning my legal case in federal courts. Try to overturn my conviction. * * * SMI will always be available via the clemency proceedings as well."  He believed a federally appointed attorney was prohibited from filing state motions (except clemency) and expressed concern he would "lose his right to counsel in federal court" due to this "foolishly devised SMI statute."  Ahmed declared he was competent, stating an attorney cannot claim a person is incompetent without court adjudication and no court declared him incompetent.

{¶15}  Noting receipt of Ahmed's letter, the trial court directed the clerk to send a copy to the attorneys and said the status conference (where Ahmed would appear by video) would address whether Ahmed authorized the documents filed on his behalf, whether he requires the appointment of counsel, and whether he wants to proceed with the SMI claim.  (5/6/22 J.E.).

{¶16}  A week before the status conference, the state filed a "pretrial brief" stating in part Ahmed had a constitutional right to decide whether to pursue SMI relief and the court need not determine if Ahmed is competent to decide this.  The state asked the court to conduct a proposed colloquy (attached to the brief), asking the court to explain the SMI evaluation to Ahmed, determine his intentions, and ask what exactly each sentence in his letter means.

{¶17}  Attorney Shank responded by stating if the status conference has been changed to an adjudicative proceeding, then she was asking for a continuance and a competency evaluation, citing R.C. 2953.21(J)(1).  She said the proposed colloquy would

not show competence and cited testimony saying Ahmed's appearance of normality on most encounters did not negate the irrational thinking with regard to the subject of his delusions. (Tr. 125-126). She noted Ahmed's filing confirmed his intent to pursue SMI relief (at some point) and demonstrated his incompetence, as it showed he could not understand the expiring SMI relief would not be available in the future or the difference between executive grace and statutory rights. She also attached four cases Ahmed claimed he had pending in federal court to show they had been dismissed without a certificate of appealability.

{¶18} In opposition, the state argued R.C. 2953.21 did not require a competency hearing (of the type before a trial), pointing out (J)(1) says the court is to determine if the defendant understands the legal consequences of the decision to decline the appointment of counsel to file an SMI petition.

{¶19} At the first hearing, the participants initially discussed the court's inability to proceed because Ahmed filed an interlocutory appeal in the case. The prosecutor said the issue (when they reconvened) would be whether Ahmed wanted the petition to proceed. (5/27/22 Tr. 8-9). Attorney Shank pointed out Ahmed's competence would need to be addressed under the SMI statute before the court could adopt any decision by him to refuse to proceed; she also noted his delusional disorder diagnosis was accepted by the trial court at his sentencing and she filed the SMI petition to preserve his expiring rights. (5/27/22 Tr. 10-11).

{¶20} Ahmed suggested the new statute was interpreted by a 1991 Supreme Court case. (5/27/22 Tr. 21). He also said it was absurd to argue he was incompetent, quoting the direct appeal from his capital case. (5/27/22 Tr. 11-13, 15-16). In overruling an argument on the denial of a pro se mid-trial competency request, the cited decision observed: Dr. Smalldon testified Ahmed suffered from a severe mental illness; this did not necessarily meet the definition of legal incompetency; a defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel; trial counsel never questioned his competency; and he prepared his own mid-trial motion for a competency evaluation using correct legal terms. *Ahmed*, 103 Ohio St.3d 27 at ¶ 66-67.

Case No. 22 BE 0071

**{¶21}** We stop to note in reviewing Ahmed's death sentence in the cited case, the Supreme Court additionally observed:

> Smalldon concluded that appellant is not insane, but suffers from a delusional disorder, persecutory type; a depressive disorder; and a paranoid personality disorder. In addition, appellant has several prominent personality traits: narcissistic trait—a pattern of grandiosity, presumptuousness, and a sense of entitlement; passive-aggressive trait— a pervasive negativistic attitude, seeing the glass half-empty, and feeling that he is getting "a raw deal"; and obsessive-compulsive trait—a preoccupation with control, order, typically at the expense of flexibility and spontaneity. According to Smalldon, appellant's paranoid-personality disorder is characterized by a pervasive suspicion of other people, a too quick tendency to believe that people are out to humiliate or demean him.

> Smalldon testified that appellant was experiencing delusional disorder of the persecutory type while committing the murders. Smalldon asserted that appellant has a severe mental illness that impaired his capacity to accurately perceive reality and think logically. However, Smalldon declined to state that because of appellant's mental illness, he lacked the capacity to understand the wrongfulness of his conduct. Rather, Smalldon stated that appellant's mental illness was of such severity that it could have substantially impaired his ability to conform his conduct to the requirements of law.

*Id.* at ¶ 177-178.  Although the trial court found Ahmed's mental illness a factor under division (B)(3) of R.C. 2929.04 ("lacked substantial capacity" to appreciate the criminality of the offenders conduct or to conform due to the mental disease), the Supreme Court said the testimony did not rise to this standard but would be a mitigation factor under a different subdivision.  *Id.* at ¶ 183.

**{¶22}** After Ahmed cited this Supreme Court decision, the trial court adjourned pending Ahmed's interlocutory appeals.  (5/31/22 J.E.).[2]  Once the appeals were

---

[2] Ahmed's May 18, 2022 (22 BE 21) and June 13, 2022 (22 BE 25) appeals were each dismissed for lack of a final appealable order.  (8/5/22 J.E.); (8/10/22 J.E.).

dismissed, Ahmed filed a pro se motion to stay and indefinitely continue the SMI proceedings until the conclusion of his federal habeas proceedings, asking "what is the rush?" This motion stated, "As Trial court knows from the record, Petitioner Ahmed is likely to prevail in his SMI claims." He mentioned losing certain rights if he were to be downgraded from a capital defendant. Although seeking to stay the SMI petition (which was filed by Attorney Shank on the last day of the statutory deadline and where a state filing agreed the petition was timely), Ahmed nevertheless complained Attorney Shank lacked authority to file the SMI petition and suggested he was not entitled to court-appointed counsel under the statute (as he already filed a post-conviction petition in 2001). He claimed he had a legal malpractice claim against Attorney Shank for abandoning him in federal court and said she was on a "personal Anti-Muslim Crusade" against him. Ahmed also declared he was competent and not indigent (citing to funds existing in 1999, such as money taken when he was arrested).

**{¶23}** The hearing reconvened on September 19, 2022. The state argued the only issues were whether Ahmed wished the petition to proceed and whether he wanted Attorney Shank to represent him, claiming the court was originally unaware she did not have his consent to act as counsel. (Tr. 3-5). The prosecutor also claimed Ahmed would be giving up his claims of innocence if he proceeded with the SMI petition, citing arguments in Ahmed's prior notice of appeal filed in this court to show Ahmed's reasoning. (Tr. 5, 13-14).

**{¶24}** Attorney Shank pointed out the motion for appointment of counsel and the SMI petition filed on the same day disclosed Ahmed may not accept her appointment and she was filing to protect his rights. She emphasized the issue at a hearing should be Ahmed's competency to reject counsel, pointing out his delusional disorder at the time of the crime was already part of the trial record (including his appearance of normality in most interactions) and she noticed certain delusional thoughts manifesting in more recent court proceedings. (Tr. 6-8, 20-21). Attorney Shank emphasized this was a one-time opportunity to be removed from death row, but Ahmed was still insisting he had active chances in the Sixth Circuit. (Tr. 11-12).

**{¶25}** Speaking by video from prison, Ahmed pointed to his latest filing as setting forth his position seeking a stay pending his federal suits. (Tr. 9-10). The court and the

attorneys indicated they had not received his filing. Ahmed again cited the Supreme Court's 2004 decision (in his direct appeal from his 2001 trial) to support his position that he was currently competent. (Tr. 16). He complained: Attorney Shank failed to file appeals for him in federal court; she was "disbarred by the Sixth Circuit to represent Ahmed in any appeal"; and the Sixth Circuit was incorrect in dismissing his appeals. (Tr. 16-118). Attorney Shank pointed out she was still his habeas counsel if there were any options to pursue. (Tr. 19).

{¶26} The court ruled Ahmed was "not incompetent" and "shall proceed on his own." After Ahmed continued to argue a party has the right to proceed on their behalf, the court explained a ruling was just made in his favor on that issue. (Tr. 22). The court asked the state to draft an entry and to set the matter for a scheduling conference with Ahmed.

{¶27} On September 21, 2022, Attorney Shank filed a motion to withhold signing any judgment proposed by the state pending a competency evaluation, citing Ahmed's misrepresentations to the court on his federal proceedings as evidence he was incompetent to reject counsel (and incompetent to withdraw the SMI petition). It was noted he was incapable of evaluating the status of his federal arguments or the need to proceed in state court for preservation purposes. The court overruled her motion. (9/23/22 J.E.).

{¶28} On September 22, 2022, the trial court filed a journal entry overruling the SMI petition and asked the state to prepare a judgment entry encompassing the ruling, citing the September 19 hearing. The court thereafter signed an entry submitted by the prosecutor, which said: Ahmed testified he did not wish to be represented by counsel; the court determined Ahmed was not incompetent; the court relieved Attorney Shank of further responsibility of representing him in these proceedings; and the SMI petition filed without authorization or approval of Ahmed was dismissed. (9/30/22 J.E.).[3]

{¶29} Ahmed filed a motion for findings of fact and conclusions of law. On November 7, 2022, the trial court issued findings of fact and conclusions of law (after

---

[3] Ahmed filed a pro se notice of appeal (22 BE 49), and Attorney Shank filed a notice of appeal on his behalf (22 BE 54). This court appointed two capital attorneys to represent Ahmed in the former appeal and dismissed the latter appeal as duplicative.

ordering the state to propose them). The court recited its September 30, 2022 order as granting Ahmed's request to discharge Attorney Shank and dismissing the unauthorized SMI petition filed without Ahmed's knowledge or consent. The court then stated: "Having no reason to suspect irregularity, the Court, by docket entry dated April 14, 2022, summarily granted the motion for appointment of counsel filed by Attorney Shank on April 12, 2002, purportedly on behalf of defendant Ahmed, to represent him" in an SMI petition.

{¶30} The court then made findings on Ahmed's competency to act on his own behalf, citing the pro se pleadings and Ahmed's "affect and demeanor" at the hearing. The court said the decision to file the SMI petition belonged to the defendant and thus the April 12, 2022 pleadings filed by Attorney Shank "are held for naught and dismissed." *Citing McCoy v. Louisiana*, __ U.S. __, 138 S.Ct. 1500, 200 L.Ed.2d 821 (2018) and *State v. Berry*, 80 Ohio St.3d 371, 686 N.E.2d 1097 (1997). In reiterating the discharge of counsel, the court similarly concluded, "Where Ahmed did not request the appointment of counsel, the Court's prior summary appointment of Attorney Shank is revoked and held for naught."

{¶31} Attorney Shank thereafter submitted a motion for appointed counsel fees, which was not filed as part of the record (under standard court practice). On December 2, 2022, the trial court issued a judgment stating the court appointed Attorney Shank "in good faith as there was no reason to suspect any irregularity" until Ahmed informed the court she was acting without his knowledge and consent. The court noted Attorney Shank acknowledged (at the May 2022 hearing) she filed the SMI petition without first securing Ahmed's consent and Ahmed confirmed (at the September 2022 hearing) the motions were filed without his authorization or approval and he did not desire her to represent him. Citing these reasons and the reasons in the September 30, 2022 and November 7, 2022 decisions, the trial court overruled the motion for appointed counsel fees.

{¶32} Attorney Shank filed a timely notice of appeal from this decision, resulting in the within appeal (22 BE 71). In addressing the state's motion to dismiss any portion of this appeal raising Ahmed's rights, we agreed this appeal would proceed with Attorney Shank as the sole appellant and the denial of counsel fees as the sole issue on appeal (as Ahmed's rights were being raised by newly appointed counsel in 22 BE 49). (1/25/23 J.E.).

## ARGUMENTS

**{¶33}** Attorney Shank sets forth the following four assignments of error on appeal:

"THE TRIAL COURT ERRED WHEN IT DENIED PAYMENT TO COUNSEL WHO WAS APPOINTED TO PURSUE A CAPITAL POST-CONVICTION CASE UNDER R.C. 2953.21 AND R.C. 2929.025, EVEN THOUGH THE COURT WAS INFORMED BEFORE MAKING THE APPOINTMENT THAT THE CLIENT HAD DIMINISHED CAPACITY, WAS BELIEVED TO BE INCOMPETENT, MIGHT NOT ACCEPT COUNSEL, AND COUNSEL WAS PROCEEDING UNDER PROF.COND.R. 1.14, BECAUSE THE COURT MONTHS LATER DECIDED THAT THE CLIENT DID NOT WANT TO PURSUE THE CASE, DISMISSED IT, AND HELD THUS, AS A MATTER OF LAW, THAT COUNSEL'S APPOINTMENT WAS 'FOR NAUGHT.'"

"THE TRIAL COURT ERRED WHEN IT CONCLUDED AS A MATTER OF LAW THAT COUNSEL'S APPOINTMENT IN SMI PROCEEDINGS UNDER R.C. 2953.21(J)(1) HAD BEEN 'FOR NAUGHT ON THE GROUND THAT 'AHMED DID NOT REQUEST THE APPOINTMENT OF COUNSEL' AND THEN DENIED PAYMENT OF APPOINTED COUNSEL'S FEES BASED ON THAT RULING."

"THE TRIAL COURT ERRED WHEN IT CONCLUDED AS A MATTER OF LAW THAT AN SMI PETITION FILED ON BEHALF OF A CLIENT WITH DIMINISHED CAPACITY UNDER PROF.COND.R. 1.14 IS 'FOR NAUGHT' IN LIGHT OF THE RULINGS IN *STATE V. BERRY*, 80 OHIO ST.3D 371 AND *MCCOY V. LOUISIANA*, 138 S.CT. 1500 (2018) AND THUS INVALIDATES COUNSEL'S APPOINTMENT AND RIGHT TO PAYMENT OF APPOINTED COUNSEL'S FEES."

"THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT IGNORED EQUITY AND JUSTICE AND DENIED PAYMENT TO APPOINTED COUNSEL WHO, UNDER THE APPOINTMENT, REPRESENTED THE CLIENT FOR SEVEN MONTHS, ATTENDED TWO STATUS CONFERENCES, PREPARED DOCUMENTS, CONDUCTED LEGAL RESEARCH, AND PROTECTED THE CLIENT'S RIGHTS."

{¶34} Attorney Shank argues the trial court erred as a matter of law by suggesting the right to appointed counsel is contingent on the defendant's request for appointment under the above-quoted R.C. 2953.21(J)(1), which contemplates the appointment of counsel even where the defendant did not seek appointment of counsel or even rejected it. She points out she cited the trial court to Prof.Cond.R. 1.14 while specifically disclosing she was taking protective action due to the expiring deadline and Ahmed's perceived incompetency. She additionally points out once counsel is appointed in a capital case, the fees are pursuant to statute. *See* R.C. 2941.51(B), citing R.C. 120.33(D). Attorney Shank emphasizes the *Berry* and *McCoy* cases cited by the trial court do not deal with attorney fees or support a proposition that an attorney cannot act to protect a defendant's rights where his competency is in doubt. It is urged the court cannot refuse to pay fees to appointed counsel based on the later decision that the appointment of counsel or the petition were "for naught" (because Ahmed was found competent to reject counsel and withdraw the SMI petition). Attorney Shank contests the court's creation of a new category of appointments: a "summary" appointment which become "for naught" if the argument under R.C. 2953.21 eventually failed. She also points out Ahmed indicated he wished to pursue SMI relief (at some point) but lacked an understanding of the effect of rejecting her timely filing on his behalf.

{¶35} Alternatively, Attorney Shank reasons the deprival of the statutory right to compensation for appointed counsel was akin to a Fifth Amendment taking of private property for public use without just compensation. She also raises equitable principles such as quantum meruit, stating she is entitled to compensation for work performed based on the court's appointment of her in a capital case. *See Reid, Johnson, Downes, Andrachik & Webster v. Lansberry*, 68 Ohio St.3d 570, 573, 629 N.E.2d 431 (1994) (even when an attorney is discharged for just cause and the contingent fee contract was not fulfilled, the attorney is entitled to recover the reasonable value of services rendered the client prior to discharge on the basis of quantum meruit).

{¶36} In response, the state argues the sole "legal issue" is whether the court can exercise "discretion to deny fees" where it was undisputed Attorney Shank commenced a post-conviction petition without Ahmed's approval. The state claims Attorney Shank misled the trial court and had no legal justification to act unilaterally in attempting to coerce

Case No. 22 BE 0071

Ahmed to accept a sentence of life without parole. It is argued Ahmed had rational reasons for rejecting the SMI petition, citing his prior arguments on innocence; according to the state, it "stands to reason" Ahmed would have to admit his responsibility for the crime to seek SMI relief. The state suggests Attorney Shank's filings improperly attempted to deprive Ahmed of due process and his Sixth Amendment right to represent himself. Citing the *McCoy* and *Berry* cases, the state urges the decision to refuse to pursue SMI relief belonged to Ahmed and suggests the attorney was trying to use him as "a pawn to be manipulated on a chessboard larger than his own case."

**{¶37}** Replying to the citation to a guideline in the Professional Conduct Rule, the state points to the preamble, which provides: "principles of substantive law external to these rules determine whether a client-lawyer relationship exists. Most of the duties flowing from the client-lawyer relationship attach only after the client has requested the lawyer to render legal services and the lawyer has agreed to do so." Prof. Cond.R., Preamble at ¶ 17. Claiming the representation and the filing of the SMI petition did not benefit Ahmed or the court system, the state also suggests the application of the doctrine of quantum meruit can result in a rejection of all fees after considering the totality of the circumstances, including the benefit to the client and the results. *See Reid*, 68 Ohio St.3d at 577 (totality of circumstances test can consider the results in addition to various other factors). Using cases on fee *reductions*, the state posits a court has discretion to deny all fees to appointed counsel.

LAW & ANALYSIS

**{¶38}** "[F]actual decisions are generally left to the court's discretion while legal decisions (including whether the facts meet a legal test) are reviewed de novo." *Blon v. Royal Flush, Inc.*, 2022-Ohio-1958, 191 N.E.3d 505, ¶ 20 (7th Dist.). When reviewing a trial court's exercise of discretion, we generally defer to the trial court but can reverse for an abuse of discretion if the judgment was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). In determining legal questions, such as the interpretation of a statute or whether the facts satisfy the applicable legal standard, the appellate court independently determines the issue without deference to the conclusion of the trial court. *See, e.g., State v. Pountney*, 152 Ohio

St.3d 474, 2018-Ohio-22, 97 N.E.3d 478; *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

**{¶39}** As recited supra, the new post-conviction provision statute speaks to the appointment of counsel as follows: "If a person sentenced to death intends to file a petition under this section, the court shall appoint counsel to represent the person upon a finding that the person is indigent and that the person either accepts the appointment of counsel or is unable to make a competent decision whether to accept or reject the appointment of counsel." R.C. 2953.021(J)(1). "The court may decline to appoint counsel for the person only upon a finding, after a hearing if necessary, that the person rejects the appointment of counsel and understands the legal consequences of that decision or upon a finding that the person is not indigent." R.C. 2953.021(J)(1).

**{¶40}** The statute contemplates counsel acting for incompetent defendants who do not seek or who even reject representation. The Professional Conduct Rule cited to the trial court by Attorney Shank instructs counsel to maintain a relationship with the client "when their capacity to make adequately considered decisions in connection with a representation is diminished" due to a condition such as a mental impairment. Prof.Cond.R. 1.14(a). "When the lawyer reasonably believes that the client has diminished capacity, is at risk of substantial physical, financial, or other harm unless action is taken, and cannot adequately act in the client's own interest, the lawyer may take reasonably necessary protective action * * *." Prof.Cond.R. 1.14(b).

**{¶41}** "If * * * a normal client-lawyer relationship cannot be maintained as provided in division (a) because the client lacks sufficient capacity to communicate or to make adequately considered decisions in connection with the representation, then division (b) permits the lawyer to take protective measures deemed necessary." *Id.* at Comment 5. "In an emergency where the health, safety, or a financial interest of a person with seriously diminished capacity is threatened with imminent and irreparable harm, a lawyer may take legal action on behalf of such a person even though the person is unable to establish a client lawyer relationship or to make or express considered judgments about the matter, when the person or another acting in good faith on that person's behalf has consulted with the lawyer." *Id.* at Comment 9. In such case, counsel "should take legal action on

behalf of the person only to the extent reasonably necessary to maintain the status quo or otherwise avoid imminent and irreparable harm." *Id.*

**{¶42}** In the *McCoy* case cited by the state and the trial court, a capital defendant expressly objected to defense counsel admitting guilt and insisted on a trial strategy based on innocence. Over these objections, the trial court allowed counsel to inform the jury during the guilt phase that the defendant committed the three murders, finding the attorney had authority to admit guilt over the client's objections. The United States Supreme Court disagreed. *McCoy v. Louisiana*, __ U.S. __, 138 S.Ct. 1500, 200 L.Ed.2d 821 (2018). The Court first noted if counsel confers with a defendant who remains silent as to a proposed concession strategy, then there is no "blanket rule" requiring express consent before employing the strategy. *Id.* at 1505, citing *Florida v. Nixon*, 543 U.S. 175, 181, 192, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004). However, when the defendant expressly objects to the strategy of admitting guilt (to obtain mercy at the capital sentencing phase), he has the Sixth Amendment right to prohibit counsel from doing so and it is structural error for a trial court to allow counsel to do so over the defendant's clear objections. *Id.* at 1505, 1509, 1511 (structural error presumes prejudice and disallows a harmless error analysis). The Court noted although trial management is counsel's realm, some choices are left for the defendant, including pleading guilty, waiving counsel or a jury, testifying, and forgoing an appeal. *Id.* at 1508.

**{¶43}** In the other cited case, the public defender claimed a death row inmate was not mentally competent to make the decision to discontinue further challenges and submit to execution, and the Ohio Supreme Court ordered the trial court to conduct a competency evaluation (as requested by the state). *See State v. Berry*, 80 Ohio St.3d 371, 686 N.E.2d 1097 (1997). At the hearing, both sides called two experts, and the trial judge conducted an extensive colloquy with the defendant, concluding he was competent to forgo further challenges. *Id.* at 372. In reviewing that decision, the Supreme Court applied a standard of whether the defendant had the capacity to understand the choice and to make a valid waiver. *Id.* at 376.

**{¶44}** Upon reviewing the evidence from the hearing, the *Berry* Court observed the defendant preferred a speedy execution to death row incarceration (with continual legal fights which he believed would never result in his release), and the Court concluded

Case No. 22 BE 0071

he was competent to forgo further proceedings because he: "understands the difference between life and death and fully comprehends the ramifications of his decision to forgo further legal proceedings"; "has the ability to choose means that relate logically to his ends"; "is capable of making a voluntary, knowing, and intelligent decision to forgo further legal proceedings"; and "his decision to do so is in fact voluntary, knowing, and intelligent." *Id.* at 383. After declaring the defendant had the capacity to appreciate his position and make a rational choice with respect to abandoning further challenges, the Court further concluded, "the Ohio Constitution does not compel us to force postconviction review upon a competent individual who has decided, for reasons of his own, not to seek it." *Id.* at 385.

**{¶45}** Attorney Shank correctly points out these cases did not involve the payment of attorney fees. The cases did not indicate in any manner that appointed counsel should not be paid if a competency proceeding failed or if an attorney acted contrary to the wish of the defendant (due to an expiring deadline and an opinion on incompetency). As she observes, counsel was appointed in those cases. For instance, in *Berry*, the Court's rejection of appointed counsel's argument on competency to waive further death challenges did not result in the disapproval of fees expended in arguing the issue.

**{¶46}** Contrary to the state's position, Attorney Shank did not mislead the trial court. Rather, the motion for appointment of counsel and the accompanying SMI petition filed on Ahmed's behalf explained the situation to the court. The motion quoted R.C. 2953.21(J)(1) regarding competency to reject the appointment of counsel and cited Ohio Professional Conduct Rule 1.14 while explaining she simultaneously filed the SMI petition to protect Ahmed's rights (as the day of her filing was Ahmed's last day to file a timely petition under the new statute, which could prevent his execution).

**{¶47}** In the motion, Attorney Shank said: she represented Ahmed in his federal habeas proceedings; he "has not been satisfied with any lawyer from the time of trial to present"; he had "diminished capacity"; and "counsel reasonably believes, given Ahmed's serious mental illness, that Ahmed lacks sufficient capacity to make adequately considered decisions with regard to pursuing his SMI claim." Additionally, the motion to be appointed counsel disclosed: "AHMED IS INCOMPETENT AND ALMOST CERTAINLY WILL NOT ACCEPT THE APPOINTMENT OF COUNSEL AND THUS WILL

BE REQUIRED APPOINTMENT UNDER THE SMI PROVISIONS FOR INCOMPETENT DEFENDANTS." (Emphasis original).

{¶48} The simultaneously filed SMI petition reiterated counsel's opinion that Ahmed was not competent to proceed with SMI litigation because he lacked the ability to consult with counsel with a reasonable degree of rational understanding and lacked a rational as well as factual understanding of the proceedings against him. The petition mentioned Ahmed refused to leave his cell when Attorney Shank visited the prison to attempt to discuss the new statute with him. She opined, "Despite a superficial appearance of ability, he cannot understand basic legal concepts or the function of court processes. He files many inexplicable pro se pleadings. Although he is not cooperative, he has never expressed a desire to die." She concluded his "incompetence" should not deprive him of the benefit of the new law due to a missed deadline and asked the court to order an evaluation and set a hearing or to stay the proceedings until Ahmed was competent to act on his own behalf.

{¶49} With these filings before it, the trial court appointed Attorney Shank to represent Ahmed in the SMI proceedings. As predicted by Attorney Shank, Ahmed protested. The court held a brief hearing five months after the appointment of counsel (after the first hearing had to be continued due to Ahmed's interlocutory appeals). The court decided Ahmed was competent to reject counsel and later dismissed the SMI petition, which is the topic of a separate appeal. Regardless of the final decision on Ahmed's competency, Attorney Shank had already been appointed.

{¶50} Contrary to the state's argument, the fact that the trial court ended up believing Ahmed wanted the court to dismiss the petition (even though he asked to stay the proceedings on the petition filed by counsel) does not mean the filing did not benefit Ahmed when made. The SMI petition filed by Attorney Shank preserved Ahmed's statutory right at the last minute before the expiration of the time under the new statute.

{¶51} Furthermore, as pointed out by Attorney Shank, "counsel assigned to a case has a right to be paid for his work" and "the trial judge's discretion is limited to determining the amount of such payment." *State ex rel. Martin v. Corrigan*, 25 Ohio St.3d 29, 31, 494 N.E.2d 1128, 1129 (1986). Therefore, regardless of whether appointed counsel's conduct warranted dismissal from representation before the case was completed, the court-

appointed attorney was statutorily entitled to compensation for the work performed. *Id.* at 30-31, citing R.C. 2941.51 (appointed counsel "shall be paid" for services and expenses). Accordingly, the Supreme Court in *State ex rel. Martin* reversed the denial of mandamus on counsel's fee request and remanded "to determine, and pay, an appropriate amount of compensation for the work performed by appellant as appointed defense counsel." *Id.* at 31 (finding this was a clear legal right). *See also State ex rel. Wood v. Christiansen*, 14 Ohio St.3d 27, 470 N.E.2d 895 (1984) (granting a writ of mandamus ordering the judge to approve fees after finding local rule's thirty-day deadline to submit application for attorney's fees was unreasonable due to the statutory right of assigned counsel to be paid).

**{¶52}** In sum, the trial court appointed Attorney Shank as Ahmed's counsel for purposes of the SMI petition. This gave rise to her entitlement to payment for services rendered on that petition. Consequently, we conclude the trial court abused its discretion as to any theory of non-disclosure by the attorney prior to appointment and erred as a matter of law as to the effect of the prior appointment. Accordingly, the trial court's decision denying fees is reversed, and the case is remanded with instructions to grant the fee application to the extent warranted by law.[4]

D'Apolito, P.J., concurs.

Hanni, J., concurs.

---

[4] We note as the fee application is not filed of record in Belmont County until it is approved and filed by the court, we do not have the application before us to evaluate. The trial court in the first instance is to verify the contents of the application and issue a judgment on the appropriate amount of fees.

<u>Case No. 22 BE 0071</u>

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are sustained and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, denying appointed counsel fees is reversed.  We hereby remand this matter to the trial court with instructions to grant the fee application to the extent warranted by law and consistent with this Court's Opinion. Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**