[Cite as *State v. Ahmed*, 2024-Ohio-904.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

NAWAZ AHMED,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 22 BE 0049**

---

Criminal Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 99 CR 192

**BEFORE:**
William A. Klatt, Retired Judge of the Tenth District Court of Appeals,
Sitting by Assignment,
Carol Ann Robb, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Reversed, Vacated and Remanded.

---

*Atty. J. Kevin Flanagan,* Belmont County Prosecutor, *Atty. Stephen Maher* and *Atty. Brenda Leikala*, Special Assistant Belmont Prosecutors, Senior Assistant Attorneys General, for Plaintiff-Appellee and

*Atty. John P. Laczko* and *Atty. Wesley A. Johnston,* for Defendant-Appellant.

Dated: March 11, 2024

**KLATT, J.**

{¶1}    Defendant-Appellant, Nawaz Ahmed, appeals the dismissal of his Petition for Post-Conviction Relief based on Serious Mental Illness ("SMI petition"), filed pursuant to R.C 2953.21(A)(1)(a)(iv) and 2929.025, by the Belmont County Court of Common Pleas. The SMI petition and a motion for appointment of counsel were filed by Attorney S. Adele Shank, Appellant's federal habeas corpus counsel, without Appellant's prior authorization, due to Appellant's previously-diagnosed mental illness and the imminent expiration of the statutory limitations period.

{¶2}    Appellant filed pro se pleadings to terminate Attorney Shank's representation because she filed the petition without his consent. Despite Appellant's mental illness, and over the strenuous objection of Attorney Shank based on Appellant's competency to waive counsel and to understand the effect of the dismissal of the petition, the trial court terminated Attorney Shank's representation and dismissed the petition. Contrary to Appellant's initial ire over Attorney Shank's decision to file the SMI petition, which was predicated upon his belief the SMI petition would negatively impact his federal habeas corpus proceeding, he filed a pro se motion to stay the SMI petition prior to the trial court's dismissal, as well as a timely pro se notice of appeal of the trial court's judgment entry dismissing the petition.

{¶3}    Appellant, through appointed appellate counsel, advances four assignments of error in this appeal. First, he argues the trial court erred in allowing him to represent himself absent a knowing, intelligent, and voluntary waiver of counsel. Second, Appellant contends the trial court erred in allowing him to dismiss the petition without first ordering a competency examination. Third, he argues the SMI statute is unconstitutional as applied in this case. Lastly, Appellant argues the trial court erred as a matter of law in failing to maintain a proper record for appeal purposes.

{¶4}    For the following reasons, the September 22 and 30, 2022 judgment entries of the trial court finding Appellant competent to waive counsel and dismissing the SMI petition are reversed and vacated, and this matter is remanded for the appointment of new counsel.

## FACTS AND PROCEDURAL HISTORY

{¶5}   Following the dismissal of the SMI petition, Attorney Shank filed a motion for attorneys' fees, which was overruled by the trial court.  We reversed the judgment entry overruling the motion for attorneys' fees last year in *State v. Ahmed*, 7th Dist. Belmont No. 22 BE 0071, 2023-Ohio-3464.  We provided the following recitation of the facts, procedural history, and governing law:

In 1999, days before [Appellant's] trial in a hostile divorce case, the bodies of [Appellant's] estranged wife, her father, her sister, and the sister's two-year old daughter were discovered at the wife's house near St. Clairsville. The victims each suffered a large slash to the neck and skull fractures. [Appellant's] electronic work badge was found by the bodies, and he last used the badge at his Columbus work place not long before his wife retrieved her family from the Columbus airport. Hours later, [Appellant] purchased a ticket to Pakistan and picked it up at a travel agent's house near a New York City airport. He signed over his car to the agent and asked the agent to watch his children, writing a note on the back of his marriage certificate stating he was leaving his children to be handed over to his wife. When [Appellant] was arrested at the airport, he had approximately $7,000 in cash, $7,500 in traveler's checks, his will, and a large cut on his right thumb. His DNA was found in blood recovered from the wife's kitchen (with a 1 in 7.6 quadrillion probability of someone else matching). *State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, 813 N.E.2d 637, ¶ 2-20.

A jury convicted Appellant of four aggravated murders (three with prior calculation and design and one for purposely killing a victim under 13 years old). See R.C. 2903.01(A),(C). He was sentenced to death. (2/2/01 J.E.; 3/2/01 J.E.). The Supreme Court affirmed his convictions and death sentence. *Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, 813 N.E.2d 637.

[Appellant's] initial petition for post-conviction relief set forth 17 grounds for relief and requested a ruling on the petition be stayed pending a competency determination (also requesting funds for an independent psychiatric evaluation). *State v. Ahmed*, 7th Dist. Belmont No. 05-BE-15, 2006-Ohio-7069, 2006 WL 3849862, ¶ 25. Among other holdings, we held a post-conviction petitioner is not entitled to a competency determination in the absence of a statute providing this right. *Id.* at ¶ 53-54.

On April 12, 2021, a statute went into effect applicable to an aggravated murder offender who had a "serious mental illness" (SMI), which is defined as a diagnosis of Schizophrenia, Schizoaffective disorder, Bipolar disorder, or Delusional disorder where the illness significantly impaired the person's capacity to exercise rational judgment to either conform the person's conduct to the law or to appreciate the nature, consequences, or wrongfulness of the conduct. R.C. 2929.025(A)(1) (even if not meeting the standard to be found not guilty by reason of insanity or the standard to be found incompetent to stand trial). The statute made such person ineligible for a death sentence. R.C. 2929.025 (E)(2). Where an argument under the SMI statute is raised, a court shall order an evaluation. R.C. 2929.025(C). However, if the defendant "refuses to submit to an evaluation ordered under this division, the court shall issue a finding that the person is not ineligible for a sentence of death due to serious mental illness." R.C. 2929.025(F)(1).

For those already convicted, these amendments permitted a post-conviction SMI petition to be filed by "any person who has been convicted of aggravated murder and sentenced to death for the offense and who claims that the person had a serious mental illness at the time of the commission of the offense and that as a result the court should render void the sentence of death, with the filing of the petition constituting the waiver described in division (A)(3)(b) of this section." R.C 2953.21(A)(1)(a)(iv). The cited division explains, "the act of filing the petition constitutes a waiver of any right to be sentenced under the law that existed at the time the offense

was committed and constitutes consent to be sentenced to life imprisonment without parole under division (A) of section 2929.06 of the Revised Code." R.C. 2953.21(A)(3)(b). For older cases, "a petition under division (A)(1)(a)(iv) of this section shall be filed not later than three hundred sixty-five days after the effective date of this amendment." R.C. 2953.21(A)(2)(b).

The post-conviction statute also provides: "If a person sentenced to death intends to file a petition under this section, the court shall appoint counsel to represent the person upon a finding that the person is indigent and that the person either accepts the appointment of counsel or is unable to make a competent decision whether to accept or reject the appointment of counsel." R.C. 2953.21(J)(1). "The court may decline to appoint counsel for the person only upon a finding, after a hearing if necessary, that the person rejects the appointment of counsel and understands the legal consequences of that decision or upon a finding that the person is not indigent." R.C. 2953.21(J)(1). The appointed attorney shall be capital-certified and not the same counsel who represented the defendant at trial (unless expressly requested by both the defendant and the attorney). R.C. 2953.21(J)(1)-(2).

Attorney Shank had been appointed as co-counsel in [Appellant's] federal habeas proceedings. On April 12, 2022, Attorney Shank filed a motion for appointment of counsel for the pursuit of an SMI petition, noting she was capital-certified and was not [Appellant's] trial counsel. Explaining she represented [Appellant] in the "last leg" of his federal habeas proceedings, Attorney Shank pointed out he "has not been satisfied with any lawyer from the time of trial to present" (citing 2005 trial court findings confirming his past complaints). Her motion opined (in bold and all capital letters): "[Appellant] is incompetent and almost certainly will not accept the appointment of counsel and thus will be required appointment under the SMI provisions for incompetent defendants."

Case No. 22 BE 0049

The motion for appointment of counsel opined [Appellant] had "diminished capacity" and "counsel reasonably believes, given [Appellant's] serious mental illness, that [Appellant] lacks sufficient capacity to make adequately considered decisions with regard to pursuing his SMI claim." Citing Ohio Professional Conduct Rule 1.14(a), Comment 5, she explained she simultaneously filed the SMI petition to protect [Appellant] rights, as the day of her filing was [Appellant] last day to file a timely petition under the new statute, which could prevent his execution.

The April 12, 2022 post-conviction SMI petition filed by Attorney Shank asked to vacate [Appellant's] death sentence under R.C. 2953.21 and R.C. 2929.025. The petition cited the expert's trial testimony concluding [Appellant] suffered "delusional disorder, persecutory type" during the time the murders were committed (Tr. 121, 131) and cited the 2001 sentencing findings where the trial court agreed [Appellant] suffered from this mental disease. With attached cases in support, it was noted SMI relief can be granted without additional evaluation or hearing if pre-existing evidence meets the petitioner's burden. Attorney Shank also said appointment of an SMI examiner with further amendments to the petition [sic], pointing out the petition can be amended without leave within 180 days.

The SMI petition reiterated counsel's opinion that [Appellant] was not competent to proceed with SMI litigation because he lacked the ability to consult with counsel with a reasonable degree of rational understanding and lacked a rational as well as factual understanding of the proceedings against him. Attorney Shank disclosed [Appellant] refused to leave his cell to speak to her after she traveled to the prison to discuss the new statute with him. It was opined, "Despite a superficial appearance of ability, he cannot understand basic legal concepts or the function of court processes. He files many inexplicable pro se pleadings. Although he is not cooperative, he has never expressed a desire to die." She concluded [Appellant's] "incompetence" should not deprive him of the benefit of Ohio's new law due

to a missed deadline, reciting the statutory provision stating the petitioner accept appointment of counsel or be found unable to make a competent decision whether to accept or reject the appointment of counsel. R.C. 2953.21(J)(1).

The petition concluded by asking the court to vacate the death sentence or grant leave to pursue discovery with an order for an evaluation and a hearing. (SMI Pet. 15-16). The court was also asked to stay the proceedings until [Appellant] was competent to act in his own best interest or hold a hearing on competence and then appoint a guardian ad litem or counsel as [Appellant's] next friend upon granting the simultaneously filed motion to appoint counsel. (SMI Pet. 12-13, 16).

On April 14, 2022, the trial court set a telephone status conference on the SMI petition and sustained the motion to appoint counsel to pursue that petition. The prosecutor filed a motion to appoint two special assistant prosecutors from the Ohio Attorney General's office to assist the state, which the trial court granted. (5/2/22 J.E.).

On April 27, 2022, [Appellant] sent a letter to the clerk, which was filed in the case, stating he did not consent to the filing of the SMI petition and asking the clerk to refuse further items filed without his specific authorization. [Appellant] rationalized he was pursuing federal habeas corpus and was "not raising the SMI claim at this stage of my federal courts proceedings." He expressed: "I must focus on winning my legal case in federal courts. Try to overturn my conviction. * * * SMI will always be available via the clemency proceedings as well." He believed a federally appointed attorney was prohibited from filing state motions (except clemency) and expressed concern he would "lose his right to counsel in federal court" due to this "foolishly devised SMI statute." [Appellant] declared he was competent, stating an attorney cannot claim a person is

incompetent without court adjudication and no court declared him incompetent.

Noting receipt of [Appellant's] letter, the trial court directed the clerk to send a copy to the attorneys and said the status conference (where [Appellant] would appear by video) would address whether [Appellant] authorized the documents filed on his behalf, whether he requires the appointment of counsel, and whether he wants to proceed with the SMI claim. (5/6/22 J.E.).

A week before the status conference, the state filed a "pretrial brief" stating in part [Appellant] had a constitutional right to decide whether to pursue SMI relief and the court need not determine if [Appellant] is competent to decide this. The state asked the court to conduct a proposed colloquy (attached to the brief), asking the court to explain the SMI evaluation to [Appellant], determine his intentions, and ask what exactly each sentence in his letter means.

Attorney Shank responded by stating if the status conference has been changed to an adjudicative proceeding, then she was asking for a continuance and a competency evaluation, citing R.C. 2953.21(J)(1). She said the proposed colloquy would not show competence and cited testimony saying [Appellant's] appearance of normality on most encounters did not negate the irrational thinking with regard to the subject of his delusions. (Tr. 125-126). She noted [Appellant's] filing confirmed his intent to pursue SMI relief (at some point) and demonstrated his incompetence, as it showed he could not understand the expiring SMI relief would not be available in the future or the difference between executive grace and statutory rights. She also attached four cases [Appellant] claimed he had pending in federal court to show they had been dismissed without a certificate of appealability.

In opposition, the state argued R.C. 2953.21 did not require a competency hearing (of the type before a trial), pointing out (J)(1) says the court is to

determine if the defendant understands the legal consequences of the decision to decline the appointment of counsel to file an SMI petition.

At the first hearing, the participants initially discussed the court's inability to proceed because [Appellant] filed an interlocutory appeal in the case. The prosecutor said the issue (when they reconvened) would be whether [Appellant] wanted the petition to proceed. (5/27/22 Tr. 8-9). Attorney Shank pointed out [Appellant's] competence would need to be addressed under the SMI statute before the court could adopt any decision by him to refuse to proceed; she also noted his delusional disorder diagnosis was accepted by the trial court at his sentencing and she filed the SMI petition to preserve his expiring rights. (5/27/22 Tr. 10-11).

[Appellant] suggested the new statute was interpreted by a 1991 Supreme Court case. (5/27/22 Tr. 21). He also said it was absurd to argue he was incompetent, quoting the direct appeal from his capital case. (5/27/22 Tr. 11-13, 15-16). In overruling an argument on the denial of a pro se mid-trial competency request, the cited decision observed: Dr. Smalldon testified [Appellant] suffered from a severe mental illness; this did not necessarily meet the definition of legal incompetency; a defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel; trial counsel never questioned his competency; and he prepared his own mid-trial motion for a competency evaluation using correct legal terms. *Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, 813 N.E.2d 637 at ¶ 66-67.

We stop to note in reviewing [Appellant's] death sentence in the cited case, the Supreme Court additionally observed:

Smalldon concluded that [Appellant] is not insane, but suffers from a delusional disorder, persecutory type; a depressive disorder; and a paranoid personality disorder. In addition, [Appellant] has several prominent personality traits: narcissistic trait – a pattern of grandiosity,

presumptuousness, and a sense of entitlement; passive-aggressive trait – a pervasive negativistic attitude, seeing the glass half-empty, and feeling that he is getting "a raw deal"; and obsessive-compulsive trait – a preoccupation with control, order, typically at the expense of flexibility and spontaneity. According to Smalldon, [Appellant's] paranoid-personality disorder is characterized by a pervasive suspicion of other people, a too quick tendency to believe that people are out to humiliate or demean him.

Smalldon testified that [Appellant] was experiencing delusional disorder of the persecutory type while committing the murders. Smalldon asserted that [Appellant] has a severe mental illness that impaired his capacity to accurately perceive reality and think logically. However, Smalldon declined to state that because of [Appellant's] mental illness, he lacked the capacity to understand the wrongfulness of his conduct. Rather, Smalldon stated that [Appellant's] mental illness was of such severity that it could have substantially impaired his ability to conform his conduct to the requirements of law.

*Id.* at ¶ 177-178. Although the trial court found [Appellant's] mental illness a factor under division (B)(3) of R.C. 2929.04 ("lacked substantial capacity" to appreciate the criminality of the offenders conduct or to conform due to the mental disease), the Supreme Court said the testimony did not rise to this standard but would be a mitigation factor under [the general catchall subsection of (B)(3)]. *Id.* at ¶ 183.

After [Appellant] cited this Supreme Court decision, the trial court adjourned pending [Appellant's] interlocutory appeals. (5/31/22 J.E.). Once the appeals were dismissed, [Appellant] filed a pro se motion to stay and indefinitely continue the SMI proceedings until the conclusion of his federal habeas proceedings, asking "what is the rush?" This motion stated, "As Trial court knows from the record, [Appellant] is likely to prevail in his SMI claims." He mentioned losing certain rights if he were to be downgraded from a

capital defendant. Although seeking to stay the SMI petition (which was filed by Attorney Shank on the last day of the statutory deadline and where a state filing agreed the petition was timely), [Appellant] nevertheless complained Attorney Shank lacked authority to file the SMI petition and suggested he was not entitled to court-appointed counsel under the statute (as he already filed a post-conviction petition in 2001). He claimed he had a legal malpractice claim against Attorney Shank for abandoning him in federal court and said she was on a "personal Anti-Muslim Crusade" against him. [Appellant] also declared he was competent and not indigent (citing to funds existing in 1999, such as money taken when he was arrested).

The hearing reconvened on September 19, 2022. The state argued the only issues were whether [Appellant] wished the petition to proceed and whether he wanted Attorney Shank to represent him, claiming the court was originally unaware she did not have his consent to act as counsel. (Tr. 3-5). The prosecutor also claimed [Appellant] would be giving up his claims of innocence if he proceeded with the SMI petition, citing arguments in [Appellant's] prior notice of appeal filed in this court to show [Appellant's] reasoning. (Tr. 5, 13-14).

Attorney Shank pointed out the motion for appointment of counsel and the SMI petition filed on the same day disclosed [Appellant] may not accept her appointment and she was filing to protect his rights. She emphasized the issue at a hearing should be [Appellant's] competency to reject counsel, pointing out his delusional disorder at the time of the crime was already part of the trial record (including his appearance of normality in most interactions) and she noticed certain delusional thoughts manifesting in more recent court proceedings. (Tr. 6-8, 20-21). Attorney Shank emphasized this was a one-time opportunity to be removed from death row, but [Appellant] was still insisting he had active chances in the Sixth Circuit. (Tr. 11-12).

Speaking by video from prison, [Appellant] pointed to his latest filing as setting forth his position seeking a stay pending his federal suits. (Tr. 9-10). The court and the attorneys indicated they had not received his filing. [Appellant] again cited the Supreme Court's 2004 decision (in his direct appeal from his 2001 trial) to support his position that he was currently competent. (Tr. 16). He complained: Attorney Shank failed to file appeals for him in federal court; she was "disbarred by the Sixth Circuit to represent [Appellant] in any appeal"; and the Sixth Circuit was incorrect in dismissing his appeals. (Tr. 16-118). Attorney Shank pointed out she was still his habeas counsel if there were any options to pursue. (Tr. 19).

The court ruled [Appellant] was "not incompetent" and "shall proceed on his own." After [Appellant] continued to argue a party has the right to proceed on their behalf, the court explained a ruling was just made in his favor on that issue. (Tr. 22). The court asked the state to draft an entry and to set the matter for a scheduling conference with [Appellant].

On September 21, 2022, Attorney Shank filed a motion to withhold signing any judgment proposed by the state pending a competency evaluation, citing [Appellant's] misrepresentations to the court on his federal proceedings as evidence he was incompetent to reject counsel (and incompetent to withdraw the SMI petition). It was noted he was incapable of evaluating the status of his federal arguments or the need to proceed in state court for preservation purposes. The court overruled her motion. (9/23/22 J.E.).

On September 22, 2022, the trial court filed a journal entry overruling the SMI petition and asked the state to prepare a judgment entry encompassing the ruling, citing the September 19 hearing. The court thereafter signed an entry submitted by the prosecutor, which said: [Appellant] testified he did not wish to be represented by counsel; the court determined [Appellant] was not incompetent; the court relieved Attorney Shank of further responsibility

of representing him in these proceedings; and the SMI petition filed without authorization or approval of [Appellant] was dismissed. (9/30/22 J.E.).

[Appellant] filed a motion for findings of fact and conclusions of law. On November 7, 2022, the trial court issued findings of fact and conclusions of law (after ordering the state to propose them). The court recited its September 30, 2022 order as granting [Appellant's] request to discharge Attorney Shank and dismissing the unauthorized SMI petition filed without [Appellant] knowledge or consent. The court then stated: "Having no reason to suspect irregularity, the Court, by docket entry dated April 14, 2022, summarily granted the motion for appointment of counsel filed by Attorney Shank on April 12, 2002, purportedly on behalf of defendant [Appellant], to represent him" in an SMI petition.

The court then made findings on [Appellant's] competency to act on his own behalf, citing the pro se pleadings and [Appellant's] "affect and demeanor" at the hearing. The court said the decision to file the SMI petition belonged to the defendant and thus the April 12, 2022 pleadings filed by Attorney Shank "are held for naught and dismissed." Citing *McCoy v. Louisiana*, 584 U.S. 414, 138 S.Ct. 1500, 200 L.Ed.2d 821 (2018) and *State v. Berry*, 80 Ohio St.3d 371, 686 N.E.2d 1097 (1997). In reiterating the discharge of counsel, the court similarly concluded, "Where [Appellant] did not request the appointment of counsel, the Court's prior summary appointment of Attorney Shank is revoked and held for naught."

*Id.* at ¶ 2-30.

**{¶6}** The foregoing facts require some elucidation. Attorney Shank plainly stated in the SMI petition and motion for appointment of counsel that she filed both pleadings without Appellant's authorization, due to Appellant's severe mental illness and the impending expiration of the statute of limitations. Attorney Shank's actions were undertaken in conformance with Ohio Rule of Professional Conduct 1.14(b), which reads in its entirety:

When the lawyer reasonably believes that the client has diminished capacity, is at risk of substantial physical, financial, or other harm unless action is taken, and cannot adequately act in the client's own interest, the lawyer may take reasonably necessary protective action, including consulting with individuals or entities that have the ability to take action to protect the client and, in appropriate cases, seeking the appointment of a guardian ad litem, conservator, or guardian.

{¶7} Shortly after Attorney Shank filed the SMI petition, Appellant filed a pro se pleading captioned, "Unauthorized Filings in my case 99-CR-192." The pleading requested legal advice regarding the effect of the pending SMI petition on his statutory right to counsel in his federal habeas corpus proceeding. The pleading also espoused unsupported legal conclusions regarding Ohio's clemency procedure.

{¶8} Specifically, the handwritten pleading reads in relevant part, "[b]efore I take further action I need to know all the facts about: * * * Fed. Statute 18 U.S.C.S. 3995(a)(2)(e) [actually 3599(a)(2)(e)] allow [sic] right to counsel as statutory [sic] right for state prisoners who are on death row. Non-death row state prisoners have no statutory right to counsel in federal courts." (4/27/22 Notice, p. 1-2.)

{¶9} Appellant was clearly irate that Attorney Shank filed the SMI petition. He argued incorrectly that SMI relief will "always be available via the clemency proceedings * * *," then asked "so why would any stupid Jewish bitch want me to file for SMI claim, when she knows I have nothing to loose [sic] by." (*Id.* at 5.)

{¶10} The trial court scheduled a hearing for May 27, 2022. According to the scheduling entry, the hearing was set to determine three issues: (1) whether Attorney Shank was authorized to file pleadings on Appellant's behalf; (2) whether Appellant sought the appointment of counsel; and (3) whether Appellant wanted to proceed with the petition.

{¶11} Prior to the May 27, 2022 hearing, Appellant filed a pro se interlocutory appeal. In his amended notice of appeal, Appellant argued that he did not "intend" to file the SMI petition, quoting R.C. 2953.21(J)(1). Appellant speculated Attorney Shank filed the SMI petition because she suffers from " 'delusions as ambulance-chaser' to make some money because she never had a successful law practice and she has never won

any criminal trial, any criminal appeal and any federal habeas corpus claim in her entire life." (5/27/2022 Amended Notice of Appeal, p. 4.) The foregoing accusations demonstrate Appellant's animosity toward Attorney Shank, as well as his failure to appreciate the running of the statute of limitations.

{¶12} Attorney Shank asserted at the May 27, 2022 hearing that Appellant's competency had deteriorated during the roughly fifteen years she represented him in federal court. She cited his countless pro se pleadings in both federal and state court to demonstrate his inability to understand legal concepts and process. Appellant, who appeared by videoconference, countered the trial court had never adjudged him to be incompetent and he was capable of self-representation. He further argued the trial court was currently without jurisdiction to rule on any arguments because of his pending appeal.

{¶13} The trial court inquired, "[s]o you deny the ability to have an evaluation of yourself, correct?" Appellant responded, "[w]ell, since Court [sic] has no jurisdiction, I refuse to answer any other questions." (5/27/22 Hrg., p. 12.) The trial court ultimately granted Appellant's request to stay the proceedings pending the outcome of his appeal.

{¶14} Appellant filed two additional pro se notices of appeal in this case following the May 27, 2022 hearing. We dismissed all three of the interlocutory appeals due to the lack of a final appealable order. The hearing was rescheduled for September 19, 2022.

{¶15} On September 6, 2022, Appellant filed a pro se "Motion to Stay and Abeyance/Set Aside the PCR-SMI Claim Proceedings in Case No. 99-CR-192, Until All Federal Constitutional Habeas Corpus Proceedings Have Finally Concluded to Avoid Interference with U.S. CONST. Art. I, Section 9, Clause 2, [29 U.S.C. 2241 and 2254], and Motion for Indefinite Continuance of PCR-SMI Proceedings in Case No. 99-CR-192." In the motions, Appellant argued the federal court's jurisdiction over his habeas corpus petition required a stay of the state court proceedings. Although he cited no relevant case law supporting his argument, he nonetheless requested a stay rather than a dismissal of his SMI petition. He asserted that an indefinite stay would protect his statutory rights to counsel and funding in his federal habeas corpus proceedings.

{¶16} At the September 19, 2022 hearing, the state argued that two issues were before the trial court: (1) did Appellant want Attorney Shank's representation, and, if not, (2) should the petition be dismissed. Confronted with the foregoing inquiries, Appellant

did not request dismissal of the SMI petition, but instead, a stay of the proceedings pending the resolution of his federal habeas corpus proceedings. Appellant stated:

> I had mailed on first of this month of [sic] a pro se motion for stay and abeyance of this * * * proceeding; and number two motion was to grant indefinite continuous [sic], like my federal habeas jurisdiction stays there, because Court of Common Pleas and federal jurisdiction, those, they start with the presumption * * * but then higher jurisdiction require [sic] the Court which acquired jurisdiction after the first court already – like the federal court has already acquired the jurisdiction, then it is the duty of the Court of Common Plea [sic] to set aside this case and wait for the conclusion of the federal jurisdiction.

(9/19/22 Hrg., p. 9-10.)  Neither the trial court nor counsel had received a copy of the pro se motion for stay.

{¶17}  The trial court did not engage in a colloquy with Appellant regarding his apparent change of heart regarding dismissal of the SMI petition.  Attorney Shank likewise did not acknowledge Appellant's shift in position.

{¶18}  In response to Appellant's request for stay, Attorney Shank asserted, "[w]ith regard to competency, I think [that is] the critical issue before the Court today and that is the one thing I [do not] want to slip through the cracks because regardless of [Appellant's] position about having filed a motion to stay and abey [sic],the critical factor is that this is a one-time opportunity for those already on death row * * * At the very least, if there is something the Court thinks requires stay and abeyance in the federal courts, I think we should verify it before a decision is made."  (*Id.,* at p. 11-12.)

{¶19}  The state countered Appellant would have to forego his claim of innocence in federal court if the SMI petition was not dismissed.  The state relied on Appellant's argument that he would be required to abandon his actual innocence claim in federal court to demonstrate Appellant "underst[ood] the proceedings."  (*Id.,* at p. 14.)

{¶20}  Attorney Shank correctly replied that for every cogent argument advanced by Appellant, there were numerous legally unsupportable assertions in his pro se

pleadings. Attorney Shank further argued Appellant could not waive counsel, based on the trial court's prior finding that Appellant suffered from severe mental illness and delusional disorder, absent a determination of his competence pursuant to R.C. 2953.21(J)(1).

{¶21} In response to Attorney Shank's argument that a competency determination was required before Appellant could waive counsel, Appellant himself argued:

> First of all, let me address all the false claims and false allegations [that Attorney Shank] is making. Federal law from U.S. Supreme Court and Ohio Supreme Court says that if the jurisdiction was acquired by false statements and those statements are proven false, then there is no longer jurisdiction to continue with counsel because counsel was (unintelligible) bad faith, fraud and other counsel misconduct.
>
> In this situation on the last hearing, I had read all the decision [sic] of the Ohio Supreme Court which clearly said [Appellant] was neither incompetent at trial nor was incompetent was the Court rule on the direct appeal [sic].
>
> After that, I have listed in the motion, which I have filed in the Court of Appeals Seventh District – this Court may have not read them, but it list [sic] a case, list all [sic] the relevant cases which I proceeded pro se in the Sixth Circuit, at least six cases, in which – one of which [Attorney Shank] was appointed * * * but she did not file even the appeals and due to that, she is disbarred by [the] Sixth Circuit to represent [Appellant] in any case in any appeal.

(9/19/22 Hrg., p. 16-17.)

{¶22} There is no entry on the docket in Appellant's federal habeas case that establishes Attorney Shank's representation was terminated for any reason. Further, as of the date of this opinion and judgment entry, Appellant's federal habeas rights have been fully adjudicated.

Case No. 22 BE 0049

{¶23} With respect to Appellant's competency to stand trial, it is important to clarify Appellant's trial counsel did not request a competency determination prior to the trial. However, near the end of the guilt phase, Appellant filed a handwritten motion requesting a competency examination. He asserted he was experiencing "extreme pain in the brain and head and * * * frequent blackouts and vertigo attacks." The trial court asked the jail's physician to examine Appellant, but Appellant would only submit to an examination by his own doctor from Columbus.

{¶24} The trial court conducted a hearing, outside the presence of the jury, in which Appellant and several employees of the Belmont County Jail testified. Appellant claimed he had vertigo and painful headaches, and he had been suffering from these problems during the 16 months he had been in jail. Employees at the jail who saw him on a daily basis rebutted his testimony. They testified Appellant had never complained of any medical, mental, or psychological conditions until the day he filed the motion for the competency evaluation.

{¶25} The trial court concluded Appellant had not established good cause. Appellant unsuccessfully challenged the trial court's refusal to order a competency examination in both his direct appeal and his original post-conviction petition.

{¶26} Attorney Shank explained at the September 19, 2022 hearing that Appellant's diagnosis of delusional disorder was among the mental illnesses specifically listed in the subsequently-enacted SMI statute. The following colloquy took place at the September 19, 2022 hearing:

ATTORNEY SHANK:  * * * I realize [it is] in the record, but the delusional disorder of which he has been diagnosed does allow for the kinds of things that the prosecuting attorney pointed out.  It is only in the areas of the delusion that the incompetency becomes apparent.  That was testified to at trial[.] Dr. Jeffrey Smalldon [it is] [sic] a typical –

THE COURT:  But the jury [did not] go with that route.

ATTORNEY SHANK:  Well, the Court found it.  They did not – they gave him the death penalty, but that [does not] mean –

APPELLANT: No. The Court did not find it. * * * Ohio Supreme Court very clearly stated [Appellant] is not incompetent.

THE COURT: Thank you. This Court does rule that [Appellant] is not incompetent. This Court sustains the position of the State of Ohio and the defendant himself, personally, and not [Attorney Shank]. He shall proceed on his own. Thank you.

(*Id.*, p. 21-22.)

**{¶27}** Appellant responded, "Ohio Statute 4705.01 Supreme Court decision say [sic] that every person has inherent right to proceed pro se." The trial court replied, "I have already ruled in your behalf."

**{¶28}** Attorney Shank added:

Your Honor, I want to make clear the differences between incompetency at the time that the Ohio Supreme Court addressed it and the incompetency that we are dealing with today and the statutory requirement that competency be determined with an evaluation if necessary. And because the Court has before it, an already finding [sic] that he suffers from delusional disorder, I [do not] see why we cannot * * * implement the statutory evaluation process for competency [to waive counsel], not SMI. There are two different steps.

(*Id.*, p. 23-24.)

**{¶29}** The trial court requested a proposed entry prepared by the state and reviewed by Attorney Shank and instructed the bailiff set the matter for another conference at which time Appellant, acting pro se, could dismiss the petition:

PROSECUTOR: Judge, if [he is] going to proceed pro se, essentially he will have the option to withdraw what has already been filed by [appointed] counsel.

* * *

Case No. 22 BE 0049

THE COURT: Set this matter for scheduling conference. Thank you.

(*Id.*, p. 24-25.)

{¶30} Attorney Shank interceded:

You Honor, could we just put on the record at least an opportunity to discuss, or do it right now, that should this be reversed, the initial filing date remains in effect that whatever comes to next relates back, because under the statute, if he – he [cannot] start again.  It [cannot] be done on over [sic].

It has to be filed by the date upon which it was filed, and one of the great concerns and one of the reasons that we brought this case was because without that having been done, he losses [sic] this opportunity forever.

(*Id.*, p. 25-26.)  The trial court responded, "Thank you."

{¶31} No other conference or hearing was conducted.  Appellant did not file a motion to dismiss.  Instead, the trial court issued a docket and journal entry on September 22, 2022 "overrul[ing] the [SMI petition] filed by [Attorney Shank] on behalf of [Appellant]," and instructing the state to submit a proposed judgment entry.  On September 30, 2022, the trial court issued its judgment entry finding Appellant competent to waive counsel, authorizing Appellant to proceed pro se, and dismissing the SMI petition because it was filed without the authorization or approval of Appellant.

{¶32} On October 6, 2022, Appellant filed an amended pro se motion for "stay and abeyance" and "indefinite continuance."  Similar to the original motion, albeit longer in form, Appellant's motion sought a stay of the SMI petition during the pendency of his federal habeas proceedings.

{¶33} On October 7, 2022, Appellant's pro se motion for findings of fact and conclusions of law and request for ruling on motion for stay or continuance, as well as his pro se notice of appeal was docketed.  In his motion for findings of fact and conclusions of law, Appellant asserted the SMI petition was dismissed without explanation.  He also inquired why the state had not filed an answer to the SMI petition and "why [Appellant] was not asked to speak about the petition and [the hearing] was terminated by the court

only asking [the] Prosecutor to speak." (10/7/22 Mot., p. 2.) The motion continues, "[t]his court conducted a sham hearing and failed to allow [Appellant] without counsel to speak about the petition." (*Id.*, p. 4.) Appellant argued the trial court erred in effectively overruling the amended motion for stay. Appellant amended the foregoing pleadings and the amended pleadings were filed on November 17, 2022.

**{¶34}** The trial court issued findings of fact and conclusions of law on November 7, 2022. The trial court summarizes Appellant's statements at both the May 27, 2022 pretrial and the September 19, 2022 hearing as follows:

> During the pretrial conference of May 27, 2022, the Court took testimony from [Appellant] by video. In a manner consistent with the pro se pleading he filed on April 27, 2022, [Appellant] testified that the SMI filing on April 12, 2022 was done without his knowledge and without his consent. In addition, [Appellant] testified that he did not authorize [Attorney Shank] to act on his behalf. [Appellant] testified that he was not asking for counsel and disavowed any intention to seek the relief requested in the SMI petition that [Attorney Shank] filed on April 12, 2022.
>
> * * *
>
> At the status conference on September 19, 2022, the Court took testimony from [Appellant] by video. [Appellant] again testified that he did not authorize [Attorney Shank] to act on his behalf. [Appellant] again testified that he was not asking for counsel and disavowed any intention to seek the relief requested in the SMI petition that Attorney Shank filed on April 12. 2022, purportedly on behalf of [Appellant.]

(11/7/22 J.E., p. 3-4.)

**{¶35}** To the contrary, Appellant did not "disavow[ ] any intention to seek the relief requested in the SMI petition" at the September 19, 2022 hearing. Appellant argued in favor of a stay of the SMI petition, in order to allow him to resolve his habeas corpus proceedings without suffering any potential prejudice to his federal case.

**{¶36}** The findings of fact and conclusions of law continue:

At all times during his testimony, [Appellant] was lucid and appropriately engaged with his surroundings. [Appellant] did not display resistance or non-compliance, but rather followed the directions of the Court, starting and stopping his arguments and testimony as directed by the Court. [Appellant's] testimony was not disorganized or abstract, but rather reflected a linear thought process that was engaged with and responsive to pertinent topics at the time of his testimony. [Appellant's] conduct during the proceedings was consistent with the expectations for behavior in a courtroom setting. [Appellant] did not display any speech or behavior that would cause the Court to doubt his ability to properly and competently act on his own behalf in these proceedings.

Based upon [Appellant's] pro se pleadings, and based on the testimony from the May 27, 2022 and September 19, 2022, [sic] proceedings, this Court finds that [Appellant] did not authorize Attorney Shank to file the SMI petition on his behalf. This Court additionally finds that [Appellant] is not seeking relief under R.C. 2929.025 but rather that the application filed on his behalf by [Attorney Shank] was done without his knowledge or consent.

* * *

Since the Court has granted [Appellant's] request to discharge [Attorney Shank] and to hold for naught and dismiss the SMI petition, [Appellant's] pro se motion to stay proceedings filed on September 6, 2022, is moot and accordingly denied. Any additional motions by [Appellant] have also been rendered moot and are accordingly denied.

(*Id.*, p. 4-6.)

**{¶37}** The trial court once again misstates Appellant's statements at the September 19, 2022 hearing. Appellant did not request dismissal of the SMI petition, but

Case No. 22 BE 0049

instead requested a stay of the state court proceedings pending the resolution of his federal court proceedings.

## ANALYSIS

## ASSIGNMENT OF ERROR NO .1

**THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION FORBID A TRIAL COURT FROM ALLOWING A CAPITAL DEFENDANT WITH A QUESTIONABLE MENTAL HEALTH HISTORY TO DECIDE TO REPRESENT HIMSELF ABSENT A KNOWING, VOLUNTARY OR INTELLIGENT WAIVER PER OHIO CRIMINAL RULE 44.**

{¶38} A postconviction proceeding is not an appeal of a criminal conviction, but a collateral civil attack on a criminal judgment. *State v. Steffen*, 70 Ohio St.3d 399, 410, 639 N.E.2d 67 (1994). "Indeed, post-conviction state collateral review itself is not a constitutional right, even in capital cases." *Id.*, citing *Murray v. Giarratano*, 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989). Accordingly, in a postconviction proceeding, a convicted defendant has only the rights granted him by the legislature. *State v. Moore*, 99 Ohio App.3d 748, 751, 651 N.E.2d 1319 (1994).

{¶39} Although the state correctly argues in its brief there is no constitutional right to counsel in post-conviction proceedings, there is a statutory right to counsel in death penalty post-conviction relief petitions. R.C. 2953.21(J)(1) reads in its entirety:

> If a person sentenced to death intends to file a petition under this section, the court *shall* appoint counsel to represent the person upon a finding that the person is indigent and that the person either accepts the appointment of counsel *or is unable to make a competent decision whether to accept or reject the appointment of counsel. The court may decline to appoint counsel for the person only upon a finding, after a hearing if necessary, that the person rejects the appointment of counsel and understands the legal*

*consequences of that decision* or upon a finding that the person is not indigent.

(Emphasis added.)

**{¶40}** In Ohio, the competency standard for waiving the right to counsel is the same as the competency standard for standing trial, that is, whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings. *State v. Wilkerson*, 7th Dist. Mahoning No. 22 MA 0034, 2023-Ohio-3596, ¶ 5, citing *State v. Bolin*, 128 Ohio App.3d 58, 62, 713 N.E.2d 1092 (8th Dist.1998). A criminal defendant is rebuttably presumed to be competent to stand trial. *State v. Barton*, 108 Ohio St.3d 402, 2006-Ohio-1324, 844 N.E.2d 307, ¶ 56, citing R.C. 2945.37(G)

**{¶41}** Ohio courts conduct a de novo review of a criminal defendant's waiver of his right to counsel. *State v. Godley*, 3rd Dist. Hancock No. 5-17-29, 2018-Ohio-4253, ¶ 9; *State v. Yeager*, 9th Dist. Summit Nos. 28604 and 28617, 2018-Ohio-574, ¶ 7; *Lakewood v. Lane*, 8th Dist. Cuyahoga No. 104534, 2017-Ohio-1039, ¶ 10, quoting *Columbus v. Abrahamson*, 10th Dist. Franklin No. 13AP-1077, 2014-Ohio-3930, ¶ 6; *State v. Alexander*, 4th Dist. Ross No. 15CA3492, 2016-Ohio-5015, ¶ 4, citing *State v. Mootispaw*, 4th Dist. Highland No. 09CA33, 2010-Ohio-4772, ¶ 21; *State v. Griffin*, 10th Dist. Franklin No. 10AP-902, 2011-Ohio-4250, ¶ 26 (noting that "[i]n the leading cases on the issue of waiver of the right to counsel, the Supreme Court of Ohio appears to have undertaken a de novo review without expressly reciting this standard of review").

**{¶42}** Turning to the facts in this case, we must determine whether Appellant "reject[ed] the appointment of counsel and underst[ood] the legal consequences of that decision." R.C. 2953.21(J)(1). Insofar as the interpretation of the foregoing statutory language is a matter of first impression, and involves a petitioner whose competency to waive counsel was in question, we apply the two-part test for competency to waive counsel in a criminal case.

**{¶43}** We must first determine whether Appellant had sufficient present ability to consult with Attorney Shank with a reasonable degree of rational understanding. However, the uncontroverted evidence in the record establishes that Appellant did not

consult with counsel at all, as Appellant refused to meet with Attorney Shank when she visited the prison to advise him of his rights under the new statute.

**{¶44}** Appellant's refusal to consult with Attorney Shank was predicated upon a deep-seated mistrust of Attorney Shank, which finds no rational explanation in the record. Attorney Shank attributed Appellant's belief that she was (at best) ineffective and (at worst) actively working against his interests to his mental illness.

**{¶45}** Appellant's diagnoses include delusional disorder, persecutory type, and a paranoid personality disorder. Dr. Smalldon further observed Appellant's mental illness is marked by a narcissistic trait and grandiosity. There is no evidence in the record Appellant has undergone any therapy or treatment during his incarceration. At the May 27, 2022 hearing, Attorney Shank observed that Appellant's competency had deteriorated over their fifteen-year relationship.

**{¶46}** The record is replete with examples of Appellant's mistrust of Attorney Shank, which includes unfounded accusations of ineffective assistance during her previous representation, as well as her alleged "personal anti-Muslim crusade" against him. Attorney Shank correctly predicted Appellant would reject her appointment.

**{¶47}** Nonetheless, the trial court did not engage in a colloquy with Appellant to determine whether his desire to terminate Attorney Shank's representation was predicated upon a logical understanding of the effect of his waiver of counsel, or a product of a paranoid delusion that the SMI petition was part of Attorney Shank's "crusade" to strip him of his right to counsel in federal court. Despite a complete breakdown of the attorney-client relationship, and the representation by Attorney Shank that Appellant had received no legal counsel regarding his rights under the new statute, the trial court did not offer to appoint new counsel.

**{¶48}** In summary, Appellant refused to consult with appointed counsel based on an irrational mistrust of Attorney Shank, which was unsupported based on her previous representation and consistent with his diagnosed mental disorders. Accordingly, we find Appellant did not have sufficient present ability to consult with counsel with a reasonable degree of rational understanding.

**{¶49}** We further find Appellant did not have a rational as well as factual understanding of the effect of his waiver of counsel. First, the trial court did not engage

in a colloquy with Appellant regarding his statutory right to counsel, despite the fact that Appellant specifically requested legal counsel regarding the interplay between the new statute and his federal habeas corpus case in his "unauthorized filings" pleading. Second, Appellant received no legal counsel regarding his waiver of counsel or the SMI petition, because he refused to speak with Attorney Shank. Finally, Appellant was not informed by the trial court that the termination of Attorney Shank's representation would result in a de facto dismissal of the SMI petition, based on the trial court's conclusion that an SMI petition filed without consent is a nullity.

{¶50} Significantly, Appellant never filed a written motion to dismiss the petition or made an oral motion to dismiss at the hearings. While Appellant asserted in his early pro se pleading that the SMI petition would negatively impact his federal habeas corpus petition, Appellant was never given the opportunity to consult with legal counsel regarding the impact of the SMI petition on the federal proceedings.

{¶51} Further, the trial court mischaracterized Appellant's testimony regarding the SMI petition in its findings of fact and conclusions of law. After Appellant's interlocutory appeals failed, he filed his pro se motion to stay the SMI petition pending the outcome of his federal habeas corpus proceedings. While the legal basis for his argument may have been invalid, the motion for stay indicates Appellant did not want to dismiss the SMI petition. The trial court's dismissal of the petition was directly at odds with Appellant's pro se motions to stay the SMI petition pending the outcome of his federal habeas corpus proceedings. The foregoing conclusion is buttressed by Appellant's arguments advanced in his pro se motion for findings of fact and conclusions of law, as well as his pro se notice of appeal of the trial court's dismissal of the petition.

{¶52} Most troubling, Appellant was led to believe he would be given the opportunity to address the SMI petition after the issuance of the judgment entry terminating Attorney Shank's representation. Rather than conducting a hearing with Appellant informing him of his right to counsel as well as the fact that dismissal of the SMI petition would foreclose him from pursuing his rights under the new statute, the trial court sua sponte dismissed the SMI petition. Further, the trial court failed to disabuse Appellant of his belief that he could refile the petition following the resolution of his federal habeas corpus proceeding, or that the standard articulated in the SMI statute would be applied in

Case No. 22 BE 0049

his clemency proceedings.  As a consequence, we find Appellant did not have a rational and factual understanding of the proceedings.

{¶53}  Finally, the Court predicated its conclusion that Appellant was competent to waive counsel based on his courtroom decorum.  Because Appellant did not speak out of turn or act disruptively, the trial court concluded he was competent to waive counsel. However, the trial court's conclusion ignores Attorney Shank's admonition that Appellant was capable of articulating the law and speaking authoritatively, thereby concealing his delusional thinking. Further, the trial court did not engage in any colloquy with Appellant regarding the effect of the termination of counsel at the September 19, 2022 hearing, but instead allowed him to make irrelevant arguments related to the dismissal of his appeals.

{¶54} Accordingly, we find that Appellant did not understand the legal consequences of his decision to waive Attorney Shank's counsel.  Because Appellant's waiver of his statutory right to counsel was invalid, we reverse and vacate the September 30, 2022 judgment entry of the trial court finding Appellant competent to waive counsel.

## ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT ERRED AS A MATTER OF LAW TO THE PREJUDICE OF APPELLANT BY ALLOWING APPELLANT TO REPRESENT HIMSELF AND DISMISS HIS SMI POSTCONVICTION PETITION WITHOUT ORDERING A COMPETENCY EVALUATION OF [APPELLANT] PURSUANT TO R.C. 2929.025(C)(F)(1) AND R.C. 2953.21.**

{¶55}  Having concluded in the first assignment of error that Appellant's waiver of counsel was invalid, we further find the trial court's dismissal of the SMI petition was an error of law.  As previously stated, Appellant did not understand and was never apprized by the trial court of the consequences of the dismissal of the petition.  He appeared to believe that he could refile the petition in the event his federal habeas corpus and request for clemency failed.  Moreover, Appellant's initial concerns regarding the effect of the SMI petition on his federal habeas corpus proceedings were ultimately supplanted by his request to stay the petition pending the outcome of his federal habeas corpus proceedings.  Accordingly, we find Appellant's second assignment of error has merit and

Case No. 22 BE 0049

we reverse and vacate the September 22 and 30, 2022 judgment entries of the trial court dismissing the SMI petition.

## ASSIGNMENT OF ERROR NO. 3

**THE SMI SCHEME AS ENACTED BY THE STATE OF OHIO AS APPLIED TO APPELLANT IS UNCONSTITUTIONAL.**

**{¶56}** All legislation enjoys a presumption of constitutionality and where a matter can be resolved on other grounds, the constitutional question should not be determined. *State, ex rel. Purdy v. Clermont Cty. Bd. of Elections*, 77 Ohio St.3d 338, 345-46, 673 N.E.2d 1351, 1997-Ohio-278; *Rispo Realty & Dev. Co. v. City of Parma* (1990), 55 Ohio St.3d 101, 105, 564 N.E.2d 425 (1990). As we have resolved this appeal on other grounds, we do not reach the constitutional challenge. Accordingly, we find Appellant's third assignment of error is moot.

## ASSIGNMENT OF ERROR NO. 4

**THE TRIAL COURT ERRED AS A MATTER OF LAW TO THE PREJUDICE OF APPELLANT BY FAILING TO MAINTAIN A PROPER RECORD ON APPEAL WHEN THE TRANSCRIPTS OF PROCEEDINGS FROM THE COURT HEARINGS WERE NOT TRANSCRIBED AND PREPARED PURSUANT TO OHIO CRIMINAL RULE 22 AND R.C. 2301.20.**

**{¶57}** In his final assignment of error, Appellant contends the transcripts from the hearings on May 27, 2022 and September 19, 2022 violate Ohio statutes and rules due to the transcribed testimony being "unintelligible, incomplete, and contains crosstalk of the parties." (Appellant's Brf., p. 13.) In support of the foregoing argument, Appellant cites the court reporter's certification, which reads in relevant part, "[t]he foregoing transcript of proceedings is a transcript of verbatim stenotype notes taken in open court during the hearing(s) of this case before the court and said transcript of proceedings constitutes all of the testimony taken during these proceedings *to the best of my ability.*" (Emphasis

added.)  Based on our resolution of the first two assignments of error, we find Appellant's fourth assignment of error is moot.

## **CONCLUSION**

**{¶58}**  For the foregoing reasons, the September 22 and 30, 2022 judgment entries of the trial court finding Appellant competent to waive counsel and dismissing the SMI petition are reversed and vacated, and this matter is remanded for the appointment of new counsel.


Robb, P.J., concurs.

Hanni, J., concurs.

---

For the reasons stated in the Opinion rendered herein, the judgment entries of the Court of Common Pleas of Belmont County, Ohio finding Appellant competent to waive counsel and dismissing the SMI petition are reversed and vacated. We hereby remand this matter to the trial court for the appointment of new counsel. Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

**<u>NOTICE TO COUNSEL</u>**

**This document constitutes a final judgment entry.**